**The below described is SIGNED.**

**Dated: March 15, 2006**   _____
**WILLIAM T. THURMAN**
**U.S. Bankruptcy Judge**



_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF UTAH
# IN THE CENTRAL DIVISION

In re:

**Cynthia Clay,**

Debtor.

Bankruptcy Number 05-80043

Chapter 13

## MEMORANDUM OPINION

The matter before the Court is the Court's consideration of confirmation of Cynthia Clay's proposed chapter 13 plan. The Court submits this Memorandum Opinion which will constitute the Court's findings of fact and conclusions of law as required by Bankruptcy Rule 7052.

Under the debtor's proposed chapter 13 plan, the debtor proposed to pay the majority of her creditors directly. The Chapter 13 Trustee objected to confirmation of the plan, arguing that direct payments are not permissible under the Bankruptcy Code. The Court determines that the changes impacting the Bankruptcy Code under the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") did not affect a debtor's right to pay secured creditors directly so long as the creditor is paid pursuant to the terms of the underlying obligation. Accordingly, the

Trustee's objection to confirmation is overruled.

**I.     FACTUAL BACKGROUND**

Ms. Clay filed for chapter 13 relief on November 2, 2005. On her Statements and Schedules, she listed only secured creditors, including two mortgage debts secured by her home totaling $112,924.05, a debt owing to the Salt Lake County Treasurer for unpaid property taxes of $1,084, and a claim owing to Capital One for $12,602.87 secured by her 2004 Dodge Neon. Ms. Clay owed pre-petition arrearages on both mortgages totaling $9,076.96. She is current on her payments owing to all other secured creditors.

On January 16, 2006, Ms. Clay filed an amended chapter 13 plan. The plan proposed to pay through the Chapter 13 Trustee only the pre-petition arrearages of $9,076.96 owing on her mortgage obligations and the claim owing to the Salt Lake County Treasurer for $1,084. Her obligations owing on her car and two mortgages would be paid "direct."[1]

On December 20, 2005, the Chapter 13 Trustee for Ms. Clay's case filed an Objection to Confirmation. The Objection argued that "direct payments" are improper per se under the Bankruptcy Code. The Trustee's Objection is the subject of this decision.

**II.    JURISDICTION AND VENUE**

The Court has jurisdiction over this matter under 28 U.S.C § 157(b)(2)(L). Venue is appropriate under 28 U.S.C. § 1408(1).

---

[1]The term "direct payment" is often used synonymously with references to "payments outside the plan." Simply stated, "direct payments" or "payments outside the plan" correspond to payments which, under a chapter 13 plan, are paid directly by a debtor to a creditor. See, e.g. In re Hankins, 62 B.R. 831, 834 (Bankr. W.D. Va. 1986). All payments made following the confirmation of a plan are in effect paid pursuant to some provision of the plan and, accordingly, the term "paid outside the plan" is a bit of a misnomer.

## III.  ANALYSIS

The Trustee argues that the framework and provisions of the Bankruptcy Code contemplate that the Chapter 13 Trustee should make all distributions arising from a chapter 13 plan. The Trustee also points to the recent changes to the Bankruptcy Code, implemented by the BAPCPA, arguing that these changes further contemplate a shift from historical convention that accepted direct payments. The Court will consider this argument as it related to the Bankruptcy Code pre-BAPCPA and then analyze whether the law was altered by the BAPCPA.

### A.  <u>Direct Payments Were Permitted under the Bankruptcy Code Pre-BAPCPA</u>

Before the BAPCPA, it was generally accepted that a debtor might choose, at his or her own discretion, to pay a secured creditor directly so long as the creditor was paid pursuant to the contract terms. In <u>In re Case</u>, the court held that a debtor benefitting from "cram-down" provisions under § 1325(b) or discharge provisions under § 1328 must generally pay such debts through the Chapter 13 Trustee or show a compelling reason why payments should be direct.[2] The court also concluded that a debtor may freely choose to pay a secured creditor directly, independent of the Chapter 13 Trustee, where the debtor is not seeking to discharge the debt or otherwise alter any rights of the creditor.[3] The court stated:

> In fact, the wording of Section 1325(a)(5) which deals only with secured claims 'provided for by the plan' would seem to anticipate that some secured claims would, in fact, not be handled pursuant to a plan. . . Likewise, however, the debtor would not be entitled to invoke the 'cram down' provisions of Section 1325(a)(5), but would be left either to pay the debt according to the original contract or to bargain with the creditor for such terms as the creditor is willing to accept. . . The trustee would have no duty to supervise the execution of this independent relationship, and the creditor concerned

---

[2] 11 B.R. 843, 846 (Bankr. D. Utah 1981) (Mabey, J.).

[3] <u>Id</u>. at 847.

3

would be left on its own to work directly with the debtor."[4]

The lesson of Case, that a debtor may choose to pay secured creditors directly so long as those creditors' rights are not altered, were largely accepted throughout the country before the BAPCPA.[5]

In this case, the Chapter 13 Trustee argues that the framework of the Bankruptcy Code does not allow for direct payments unless the debtor can show special circumstances. As the law stood before the BAPCPA, this argument would most likely fail. Case makes clear that a debtor need only show cause to justify direct payments to a secured creditor where that creditor's rights are altered by the proposed plan or where that creditor's claim will be discharged under the plan.[6]

Pre-BAPCPA courts were not blind to the potential problems threatening the Chapter 13 Trustee system if debtors chose to pay most of their claims directly.[7] Under § 326(b), a Chapter 13 Trustee's fees are based on a percentage of the payments made through the Trustee. Courts recognized that the convention outlined by Case might motivate debtors to avoid Chapter 13 Trustee fees by paying the bulk of their chapter 13 payments directly.[8] Courts addressed these

---

[4]Id. at 848.

[5]See, e.g. In re Aberegg, 961 F.2d 1307 (7th Cir. 1992) (holding that the only limitation on direct payments is that a chapter 13 plan must otherwise meet the requirements of § 1325(a)); Friendly Fin. Discount Corp. v. Bradley, 705 F.2d 1409 (5th Cir. 1983); In re Gregory, 143 B.R. 424 (Bankr. E.D. Tex. 1992) (stating that "this Court is unaware of any policy reason why a debtor should be per se prohibited from acting as the disbursing agent for a priority claim.").

[6]11 B.R. at 847.

[7]See Keith Lundin, Chapter 13 Bankruptcy §§59-3, 64-4, 147-2, (3d ed. 2000 & Supp. 2004); In re Wright, 82 B.R. 422 (Bankr. W.D. Va. 1988) (rejecting a plan proposing direct payments as not proposed in good faith).

[8]See In re Hankins, 62 B.R. 831, 835 (Bankr. W.D. Va. 1986); See also In re Sorrell, 286 B.R. 798, 803 n.2 (Bankr. D. Utah 2002) (noting that the holding of In re Case was partially abdicated by changes to 28 U.S.C. § 586(e), in that a Chapter 13 Trustee is now only entitled to fees from payments made by the Trustee).

concerns not by forbidding direct payments, but by analyzing plans providing for direct payments under either the good faith analysis of § 1325(a)(3)[9] or the feasibility analysis of § 1325(a)(6).

### B. Effect of the BAPCPA on Direct Payments

The Chapter 13 Trustee argues that recent changes to the Bankruptcy Code by the BAPCPA require the Court to reconsider the holding of Case. The Court has a longstanding history of applying the rationale of Case, and the Court finds the reasoning of Case persuasive. It is true that the holding of Case was partially abdicated by amendments to the Bankruptcy Code in 1986,[10] but those amendments did not affect the portion of its ruling discussing a debtor's right to pay secured creditors directly.[11] Thus, the Court will only stray from the holding of Case if it finds that the changes brought by the BAPCPA require a new rule of law.

The rationale for Case's holding was based largely on four provisions of the Bankruptcy Code: §§ 1302(e),[12] 1322(a)(1), 1325(b), and 1326(b). The changes brought to the Bankruptcy Code by the BAPCPA impacted none of the substantive portions of these provisions.[13]

---

[9] See In re Ristic, 142 B.R. 856 (Bankr. E.D. Wis. 1992) (finding that a plan was not proposed in good faith where the costs to the Trustee of administration were greater than the return to unsecured creditors).

[10] See Sorrell, 286 B.R. at 803 n.2 ("The amendment to § 586(3) appears to modify and trump the holding in the case of In re Case, 11 B.R. 843 (Bankr. D. Utah 1981), wherein the court held in the context of a Chapter 13 case that when a secured claim is provided for in the plan, whether paid directly by the debtor or to the trustee, the payments are subject to the trustee's statutory fee.").

[11] Courts have implicitly acknowledged that Case is still valid by citing to its holding even after the 1986 amendments. See, e.g. In re Huyck, 252 B.R. 509, 514 (Bankr. D. Colo. 2000); In re Tartaglia, 61 B.R. 439, 441 (Bankr. D.R.I. 1986) (following the holding of Case, allowing a debtor to pay secured creditors directly under the terms of the contract terms); In re Erickson Partnership, 77 B.R. 738, 746 (Bankr. D.S.D. 1987).

[12] Repealed in 1986 by Pub. L. No. 99-554.

[13] Section 1302(e), a provision formerly dealing with a Chapter 13 Trustee's fees, was repealed in 1986 and replaced with § 326(b). This change did not affect the analysis of Case. Even after § 1302(e) was repealed, courts universally continued to allow chapter 13 plans proposing direct payments. See Lundin, *supra* § 59.1.

Pointing to recent changes under the BAPCPA to §§ 1325(a)(5) and 1326(a)(1)(C), the Trustee argues that the holding of Case has been superseded by statute. Section 1325(a)(5) requires that "with respect to each allowed secured claim provided for by the plan," the debtor must obtain the creditor's acceptance of the plan, surrender the secured property, or, among other things, provide for payments to the creditor through the plan "in equal monthly amounts." The Trustee argues that this requirement for payments to be in equal monthly amounts infers a Congressional intent that most debtors should pay secured claims through the plan. The Trustee argues that if Congress had intended for secured creditors to receive payments directly, § 1325(a)(5) would require only payments commensurate with the terms of the secured debt.

This argument was addressed by the holding of Case itself. Although some of the terms in § 1325(a)(5) were altered by the BAPCPA, this "cram-down provision" is not new to the Bankruptcy Code. Before the BAPCPA, § 1325(a)(5) began with the same preamble as it does today - "with respect to each allowed secured claim provided for by the plan." The court in Case addressed this provision by reasoning that a secured claim is only "provided for by the plan," and thus subject to the requirements of § 1325(a)(5), if the creditor is not paid pursuant to the terms of the contract.[14] Congress substantially altered the terms of § 1325(a)(5) through the BAPCPA but chose not to amend the preamble to this provision. Thus, any changes to the provisions of § 1325(a)(5) do not implicate a Congressional intent to alter the holding of Case, but only an intent to legislate against the background of Case. Accordingly, the Court determines that the changes under the BAPCPA to § 1325(a)(5) do not infer that the holding of

---

[14] 11 B.R. at 845 ("Therefore, for the Court to exercise power over the secured claim in confirming a plan either with the creditor's acceptance or pursuant to the 'cram down' provisions, the secured claim must be provided for in the plan.").

6

Case is superseded.

The Trustee also argues that changes under the BAPCPA to § 1326(a)(1) show Congressional intent to overrule Case. Section 1326(a)(1) states:

> "Unless the court orders otherwise, the debtor shall commence making payments no later than 30 days after the date of the filing of the plan or the order for relief, whichever is earlier, in the amount-
> (A)   proposed by the plan to the trustee;
>
> [. . .]
>
> (C)   that provides adequate protection directly to a creditor holding an allowed claim secured by personal property to the extent the claim is attributable to the purchase of such property by the debtor for that portion of the obligation that becomes due after the order for relief, reducing the payments under subparagraph (A) by the amount so paid and providing the trustee with evidence of such payment, including the amount and date of payment."

The Trustee argues that § 1326(a)(1)(A) installs a presumption that debtors should normally pay all creditors through the Trustee. The Trustee believes § 1326(a)(1)(C) requires a debtor to give evidence of direct payments to the Trustee precisely because Congress intended that post-confirmation payments to those creditors would be made through the Trustee.

The Court declines to read § 1326(a)(1) so broadly. It is not clear from the terms of this provision that Congress intended to eliminate a debtor's right to pay secured creditors directly under the terms of the contract.

In fact, the changes to § 1326 might even infer that a debtor's right to pay secured creditors directly is placed even further beyond question. Section 1326(a)(1)(C) states that within 30 days of filing, the debtor must commence making any payment "that provides adequate protection *directly to a creditor holding an allowed claim secured by personal property to the extent the claim is attributable to the purchase of such property by the debtor. . .*"

7

(emphasis added).[15]  This provision specifically contemplates that before a debtor's chapter 13 plan is confirmed, the debtor will make payments directly to secured creditors.  It would seem an awkward result if the debtor could make payments directly to secured creditors before plan confirmation but never make such payments after confirmation.  The Court believes that, if anything, the changes to § 1326(a)(1) indicate a Congressional intent to allow debtors to continue making payments to secured creditors directly under the terms of the contract.

Other changes to the Code under the BAPCPA solidify the Court's reasoning.  Section 1325(a)(9) states that a secured creditor's claim may not be "stripped-down" by a chapter 13 plan if the creditor has a purchase money security interest in a motor vehicle purchased within 910 days of filing for bankruptcy protections.  When the revisions brought by the BAPCPA were drafted, the Bankruptcy Code already had a similar provision relating to creditors secured by a debtor's personal residence.[16]  Courts universally responded to § 1322(b)(2) by acknowledging a debtor's right to pay mortgage creditors directly.[17]  Legislating against this background, Congress provided a similar restriction for creditors secured by a debtor's vehicle.  It seems clear that the policy behind this new provision is to restrict a bankruptcy's effect on a debtor's relationship with a creditor secured by the debtor's vehicle.  Not only did Case survive the BAPCPA, but its allowance for direct payments was important to the policy supporting changes to § 1325.

---

[15] The Court notes that Standing Order #2 amending Local Rule 2083-1(b)(1) directly overrides the requirements of § 1326(a)(1)(C).  This does not impact the Court's analysis.

[16] 11 U.S.C. § 1322(b)(2) (2006).

[17] In re Telfair v. First Union Mortgage Corp., 216 F.3d 1333 (11th Cir. 2000); In re Wright, 82 B.R. 422, 423 (Bankr. W.D. Va. 1988) ("[T]he court notes in passing that home mortgages are traditionally paid by the debtors directly, with good reason.").

Finally, the Trustee points to the holding of In re Harris[18] and urges the Court to adopt its reasoning. Specifically, the Trustee highlights language in Harris that "[a] debtor should not be allowed to deny the Trustee the percentage fee by paying debts directly. Such a result would frustrate the statutory scheme."[19] The Court has carefully reviewed the holding of Harris. Despite the language quoted by the Trustee, the Harris case held that a debtor *does* have a right to pay secured creditors directly under the terms of the contract.[20] In language eerily similar to that of Case, the court in Harris stated, "[a] debtor may choose not to provide for one or more secured claims and elect instead to pay those claims directly to the creditor outside the plan."[21] The language cited by the Trustee is found under the context of the Court's discussion of direct payments to creditors *impacted* by a proposed plan.[22] Thus, the Court concludes that the Harris case, urged upon the Court by the Trustee, is neither at odds with the Court's position nor with the holding of Case.

Accordingly, the Court determines that the holding of Case survived the BAPCPA. Chapter 13 debtors may still choose to pay secured creditors directly so long as those debts are paid pursuant to the contract terms.

In this case, Ms. Clay proposes to pay $10,189.56 through the Chapter 13 Trustee. Aside from payments to creditors secured on her home, Ms. Clay proposes to pay $12,602.87 directly

---

[18]107 B.R. 204 (Bankr. D. Neb. 1989).

[19]Id. at 206.

[20]Id. at 208 ("The plan may be silent on the debt, in which case the debtor may make direct payments to the creditor. . .").

[21]Id. at 206.

[22]Id.

9

to secured creditors. The Court determines that Ms. Clay is entitled to pay her secured creditors directly so long as those creditors are paid pursuant to the contract terms. As the Trustee does not object to these direct payments on the grounds of good faith or feasibility, the Court need not address these concerns as they relate specifically to the proposed direct payments.

**IV.    CONCLUSION**

The Trustee's Objection to Confirmation is OVERRULED as it relates to the direct pay issue.

_____End of Document_____



Service of the foregoing **MEMORANDUM OPINION** will be effected through the Bankruptcy Noticing Center to each party listed below.

Kevin Anderson
OFFICE OF CHAPTER 13 TRUSTEE
32 Exchange Place, Suite 600
Salt Lake City, Utah 84111

David Berry
BERRY & TRIPP, P.C.
5296 South 300 West, #200
Salt Lake City, UT 84107

Cynthia Clay
2636 S. Melville Drive
Magna, Utah 84044

Sanford Barrett
Whatcott, Barrett & Hagen PC
1846 South 300 West
Salt Lake City, UT 84115

All parties and addresses appearing on the mailing matrix.



Case 05-80043 Doc 23 Filed 03/16/06 Entered 03/16/06 16:01:41 Desc Main
Document Page 12 of 12